UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODILIA CARILLO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:13-cv-2401-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from April 5, 2010, plaintiff's alleged disability onset date, through the date of the final administrative decision.  (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 20.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 21.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on November 16, 1968, has a tenth grade education, and previously worked as a bookkeeper, telemarketer, cashier, and medical assistant, among other jobs.[2] (Administrative Transcript ("AT") 191, 225, 269.)  On April 28, 2011, plaintiff applied for both DIB and SSI, alleging that she was unable to work as of April 5, 2010.  (AT 12,191-97.)  On September 21, 2011, the Commissioner determined that plaintiff was not disabled.  (AT 12, 112-16.)  Upon plaintiff's request for reconsideration, the determination was affirmed on January 6, 2012.  (AT 118-22.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 18, 2013, and at which plaintiff (represented by counsel) testified.  (AT 12, 39-78.)

In a decision dated June 21, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from April 5, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 12-25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 26, 2013.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on November 19, 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ failed to properly consider the medical opinion evidence in the record when assessing plaintiff's residual functional capacity ("RFC"); and (2) whether the ALJ erred in exclusively utilizing the Medical-Vocational Guidelines at Step Five to determine that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

  A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the First Step, the ALJ concluded that plaintiff had

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

not engaged in substantial gainful activity since April 5, 2010, plaintiff's alleged disability onset date. (AT 14.) At Step Two, the ALJ determined that plaintiff had the following severe combination of impairments:

> [H]istory of right shoulder surgery followed by closed manipulation; lumbar spine strain or sprain; moderate degenerative changes of the cervical spine; cervical spine spondylolisthesis – congenital; degenerative disc disease and myofacial pain syndrome of the lumbar spine; history of uterine leiomyoma, not otherwise specified; headache; restless leg syndrome; history of irritable bowel syndrome; gastroesophageal reflux disease; history of hiatal hernia; hepatitis; interstitial cystitis; exogenous obesity; right lateral epicondylitis; and depression.

(Id. (citations omitted).) However, at Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 15.)

Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She cannot more than occasionally perform overhead push-pull or reaching with the right upper extremity. She cannot more than frequently perform overhead push-pull or reaching with the left upper extremity. She must have a restroom break every two hours. She must avoid concentrated exposure, *i.e.*, intense, continuous, intractable, unremitting exposure, to hazards like "dangerous and unprotected" moving machinery, heights and bodies of water, etc. She can have more than frequent, but less than constant, face-to-face interaction with the general public.

(AT 17.)

---

> claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to Step Five. Id.

4

At Step Four, the ALJ found that plaintiff was able to perform her past relevant work as a telemarketer because such "work does not require performance of work-related activities precluded by the claimant's residual functional capacity." (AT 21-22.) Even though the ALJ determined that plaintiff could perform her past relevant work, the ALJ continued to Step Five and determined that considering plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that plaintiff could have performed. (AT 25-26, 54-55.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from April 5, 2010, through the date of the ALJ's decision. (AT 24.)

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.  *Whether the ALJ Failed to Properly Consider the Medical Opinion Evidence in the Record When Assessing Plaintiff's RFC*

Plaintiff argues that the ALJ erred in his consideration of the medical opinion evidence in the record in multiple respects. First, plaintiff asserts that the ALJ erred by crediting the opinion of Dr. Johnson, an examining physician, with "great probative weight" in support of the ALJ's RFC determination because he did not explain why he was not including the more restrictive aspects of Dr. Johnson's opinion in his RFC determination. Second, plaintiff claims that the ALJ erred by assigning "slightly reduced probative weight" to the opinion of Dr. Caton, plaintiff's treating orthopedist. Finally, plaintiff asserts the ALJ erred by assigning "slightly reduced probative weight" to the opinion of Dr. Senegor, plaintiff's treating neurologist.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record;

5

and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

        a.     Dr. Johnson

Dr. Johnson, Board Certified in Physical Medicine and Rehabilitation, examined plaintiff on August 28, 2011. (AT 398-403.) During this examination, Dr. Johnson observed that plaintiff listed to the left somewhat when standing, walked without assistance with a "right-sided limp or antalgic gait" due to what plaintiff described as "hip pain," and was "able to stand on [her] tiptoes and heels with some amount of pain." (AT 399.) Dr. Johnson further noted that plaintiff exhibited pain when engaging in range of motion exercises concerning her back, hips, knees, and upper extremities. (AT 399-400.) Dr. Johnson observed that his examination was somewhat limited by plaintiff's "inability to cooperate with provocative testing due to having too much pain." (AT 402.) However, he also observed that "[plaintiff's] pain symptoms did seem to be somewhat amplified and out of proportion to the tests being performed." (Id.) Dr. Johnson further noted that plaintiff had "had a [then-]recent right shoulder debridement surgery and [was] . . . in physical therapy" at the time of examination. (Id.)

////

Dr. Johnson diagnosed plaintiff with: "bilateral shoulder pain secondary to chronic tendonitis/bursitis, status post recent right shoulder surgery; "low back pain secondary to muscular strain, possible degenerative joint or disk disease; "right hip pain, possibly secondary to bursitis"; and "bilateral knee pain, possibly secondary to patellofemoral pain or cannot rule out internal derangement or other inflammatory issue." (AT 401.) Based on these examination findings, Dr. Johnson issued the following opinion:

> [T]he claimant currently can lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand or walk six hours out of an eight-hour workday. She could sit for six hours of an eight-hour workday. She can do occasional push and pull with the right upper extremity at this time. However, this limitation is largely based on the fact that she had a recent right shoulder surgery. She may have lesser restriction or limitation after completion of physical therapy within the next six months. With the left shoulder, she can do frequent push and pull. She can do frequent push and pull with the bilateral lower extremities. She can do frequent stooping, bending, kneeling and crouching, and occasional crawling. She cannot do any significant vertical climbing at this time. She can do occasional stair climbing. At this time, she is limited from overhead activities at the right shoulder as she had a recent debridement surgery and is currently in physical therapy. Again, I would state that she may have significant improvement in her range of motion within the next six months or so after completion of physical therapy. For the time being, she cannot perform overhead tasks with the right shoulder. She should avoid repetitive overhead activities with the left shoulder but has no other definitive limitations at the shoulder. She has no limitations to gross or fine manipulation handling or fingering. She has no visual, communicative or workplace limitations. She is not in need of assistive device for daily ambulation at this time.

(AT 402.) The ALJ assigned this opinion "great probative weight" because "[Dr. Johnson] is Board Certified and his analysis is consistent with his testing and his review of the records." (AT 20.)

Plaintiff asserts that the ALJ's determination that plaintiff could occasionally perform overhead activities with her right shoulder and could frequently perform overhead push/pull or reaching activities with her left shoulder conflicted with Dr. Johnson's opinion that plaintiff could not perform any overhead activities with her right shoulder and could not perform repetitive overhead activities with her left shoulder. Plaintiff argues that ALJ's failure to provide reasons why he did not credit the more severe shoulder restrictions opined by Dr. Johnson despite

according the rest of Dr. Johnson's opinion great weight and largely adopting the rest of Dr. Johnson's findings constituted reversible error. This argument is not well taken. Contrary to plaintiff's contention, the ALJ's RFC determination as to plaintiff's ability to reach overhead with respect to both of plaintiff's shoulders did not conflict with Dr. Johnson's opinion.

As noted above, Dr. Johnson opined that plaintiff could not perform overhead tasks with her right shoulder. However, he noted that such a restriction was only "[f]or the time being." (AT 402.) This opinion was issued on August 28, 2011, nearly two years prior to the ALJ's June 21, 2013 decision. Furthermore, as Dr. Johnson noted, plaintiff had undergone surgery on her right shoulder just prior to his examination and was attending physical therapy for that shoulder at the time of the examination. Dr. Johnson further determined that plaintiff's right shoulder limitations were based on the fact that she had recently undergone surgery and that "[plaintiff] may have lesser restriction or limitation after completion of physical therapy within the next six months." (Id.) Accordingly, it was reasonable for the ALJ to determine that this limitation was temporary and that plaintiff's ability to perform overhead activities with her right shoulder would improve over time such that she would not be limited to the extent opined by Dr. Johnson throughout the majority of the alleged disability period. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193, 1198 (9th Cir. 2004) (citing Andrews, 53 F.3d at 1041) ("("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record . . . . When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."); see also Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987) ("The general rule is that conflicts in the evidence are to be resolved by the Secretary ... and that the Secretary's conclusion must be upheld where there is more than one rational interpretation of the evidence.").

Indeed, other medical opinions in the record developed after Dr. Johnson issued his opinion support the ALJ's determination that the right shoulder limitations opined by Dr. Johnson were temporary and that plaintiff could occasionally engage in overhead activities using her right shoulder. On September 14, 2011, Dr. Taylor, a non-examining consulting physician, reviewed plaintiff's medical records and opined that plaintiff was "limited to occasional" overhead

1   reaching with her right upper extremity and that there were no opinions in the record at that time
2   from plaintiff's treating or examining physicians that significantly deviated from this conclusion.
3   (AT 379, 381.)  Similarly, on January 5, 2012, Dr. Zhuetlin, another non-examining consulting
4   physician, reviewed plaintiff's medical records and opined that plaintiff was limited to occasional
5   overhead reaching with her right upper extremity.  (AT 93-94.)  The ALJ assigned "great
6   probative weight" to both of these opinions because they "were consistent with the records at the
7   time of their review," which included Dr. Johnson's opinion and examination notes.  (AT 21.)
8   Substantial evidence in the record supported the ALJ's determination that plaintiff was limited to
9   occasional overhead reaching using her right shoulder and that the severity opined by Dr. Johnson
10  was only temporary.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of
11  non-treating or non-examining physicians may also serve as substantial evidence when the
12  opinions are consistent with independent clinical findings or other evidence in the record.").

13          Similarly, the ALJ's determination that plaintiff was limited to frequent overhead pulling,
14  pushing, and reaching using her left shoulder did not directly conflict with Dr. Johnson's opinion
15  concerning plaintiff's use of that shoulder.  With respect to plaintiff's left shoulder, Dr. Johnson
16  opined that plaintiff can do "frequent push and pull" with her left shoulder and "should avoid
17  repetitive overhead activities with the left shoulder but has no other definitive limitations at the
18  shoulder."  (AT 402.)  The ALJ's determination with respect to plaintiff's ability to push and pull
19  using this shoulder mirrored Dr. Johnson's opinion.  Furthermore, in light of Dr. Johnson's
20  examination notes and the other opinions in the record, the ALJ reasonably interpreted Dr.
21  Johnson's limitation concerning repetitive motion to mean that plaintiff was able to perform
22  overhead activities with this shoulder no more than frequently.  See Batson, 359 F.3d at 1193,
23  1198; Sprague, 812 F.2d at 1229-30.

24          When Dr. Johnson's clinical findings and opinion are viewed as a whole, they support the
25  ALJ's conclusion that plaintiff is capable of performing light work with the stated nonexertional
26  restrictions relating to overhead pushing, pulling, and reaching, and other physical workplace
27  activities.  Accordingly, the ALJ's accordance of "great probative weight" to Dr. Johnson's
28  opinion was proper and supported by substantial evidence.

       b.  <u>Dr. Caton</u>

   The record shows that Dr. Caton, an orthopedist, began treating plaintiff in March of 2011 and continued to treat her through May of 2012.  During his first consultation with plaintiff on March 3, 2011, Dr. Caton noted plaintiff's back and shoulder pain had reached a point that she was a candidate for surgery.  (AT 367-69.)  After he performed right shoulder surgery on plaintiff, Dr. Caton noted that the procedure had been carried out without difficulty and that plaintiff's complaints of pain stemmed from the surgery itself.  (AT 363.)  Dr. Caton then had plaintiff begin a physical therapy program to recover from the surgery.  (AT 363-64.)  In the months after surgery, Dr. Caton's notes indicated that plaintiff was generally making steady progress with respect to her shoulder's range of motion as a result of physical therapy.  (AT 353, 355, 359, 361.)  However, Dr. Caton noted on September 1, 2011, that plaintiff's progress with her shoulder had slowed, and had actually begun to regress.  (AT 351.)  On September 26, 2011, Dr. Caton found that plaintiff's range of motion in her right shoulder had further decreased.  (AT 348-49.)  Dr. Caton recommended that plaintiff undergo a second right shoulder surgery.  (AT 346, 349-50.)  On November 3, 2011, Dr. Caton stated that plaintiff had undergone a second surgery for her right shoulder and that "she is doing extremely well."  (AT 344.)  Dr. Caton further stated that plaintiff "ha[d] been working very well with her shoulder motion following her recent procedure."  (<u>Id.</u>)  Dr. Caton noted further improvement later that month.  (AT 342-43.)

   On May 31, 2012, Dr. Caton saw plaintiff for an additional follow up regarding her right shoulder and the progress she had made since her last surgery.  (AT 473.)  Dr. Caton noted that plaintiff did not appear to tolerate pain very well and that there was not much more he could offer her at that time.  (AT 474.)  Dr. Caton made plaintiff "[p]ermanent and [s]tationary in regards to [her] shoulder."  (<u>Id.</u>)  Dr. Caton opined with respect to work limitations that plaintiff could do "no heavy lifting, pushing, or pulling greater than 25 lbs.," "[n]o lifting about the horizontal with the right upper extremity," and "[n]o climbing of ladders and no repetitive motion of the right upper extremity."  (AT 474.)  Dr. Caton also opined that these restrictions were permanent and that plaintiff may need to use pain pills, anti-inflammatories, muscle relaxants, sleep medication and further physical therapy moving forward.  (<u>Id.</u>)  The ALJ gave this opinion "slightly reduced

1  probative weight" because "[Dr. Caton's] restrictions are only slightly different from the light
2  exertional limitations reached in [the ALJ's] decision."  (AT 21.)
3        As the ALJ correctly noted, many of the limitations opined by Dr. Canton were
4  substantially similar to or the same as those determined by the ALJ in his decision.  For instance,
5  both Dr. Caton and the ALJ found that plaintiff's impairments prevented her from engaging in
6  heavy lifting and ladder climbing, and from no more than occasionally using her right upper
7  extremity for pushing and pulling activities.  Generally, the limitations determined by Dr. Canton
8  indicated that plaintiff could perform modified light work, as was determined by the ALJ in his
9  decision.[4]
10        The ALJ's decision deviated from Dr. Caton's opinion in the key respect that Dr. Caton
11  opined that plaintiff could do no overhead lifting with her right arm, while the ALJ determined
12  that plaintiff could do occasional overhead activities with that extremity.  The ALJ noted the
13  differences between Dr. Caton's opinion and the ALJ's own determination, which was based on a
14  "careful consideration of the entire record."  (AT 17.)  In essence, the ALJ determined that certain
15  aspects of Dr. Caton's opinion relating to plaintiff's right shoulder conflicted with other medical
16  evidence in the record, thus entitling it to lesser weight.  As noted above with respect to Dr.
17  Johnson's opinion, the ALJ properly determined that plaintiff had the RFC to engage in no more
18  than occasional overhead reaching activities based on the clinical findings and opinion of Dr.
19  Johnson and the non-examining opinions of Dr. Taylor and Dr. Zhuetlin.  It was solely for the
20  ALJ to resolve the conflict between Dr. Caton's opinion and these other opinions in the record.
21  See Andrews, 53 F.3d at 1041.  The ALJ properly resolved this conflict by finding the other
22  opinions more persuasive.  Accordingly, the ALJ did not err in assigning "slightly reduced
23  probative weight" to Dr. Caton's opinion.
24  ////
25  ////

---

[4] Under the relevant regulations, "light work" is defined as work involving lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm and leg controls. 20 C.F.R. § 404.1567(b).

c. <u>Dr. Senegor</u>

Dr. Senegor, a neurologist, treated plaintiff from November 2012 through 2013. On January 3, 2013, Dr. Senegor issued a medical assessment of plaintiff's ability to perform work-related physical activities. In this assessment, Dr. Senegor opined that plaintiff was able to: occasionally lift and carry up to no more than 10 pounds; sit, stand, or walk for no more than one hour total in an eight-hour workday; frequently engage in simple grasping and fine manipulation with both hands; never use either foot, climb, balance, stoop, crouch, kneel, crawl, or push/pull; and occasionally reach and handle. (AT 469-71.) Dr. Senegor clarified that all of these restrictions are due to plaintiff's "lumbar degenerative disc disease." (AT 472.)

The ALJ gave Dr. Senegor's opinion "slightly reduced probative weight" for the following reasons:

> Dr. Senegor is a specialist and a treating doctor. His opinion is consistent with his observations about the claimant getting worse as she could no longer bend over. However, Dr. Senegor's exertional limitations are out of proportion when compared to the minimal findings in the claimant's lumbar spine as revealed in the imaging studies [in the record]. His opinion that the claimant's ability to sit, stand and walk only one hour in eight does not reflect the total adjudicatory period. There is no indication that this level of limitation will continue for 12 continuous months and he recommended conservative therapies, including another round of injections.
>
> All of the medical opinions before Dr. Senegor, including other treating doctors, agree that the claimant is limited to light work.

(AT 20.) While the ALJ gave multiple reasons for according slightly reduced weight to Dr. Senegor's opinion, the ALJ's assertion that Dr. Senegor's opinion conflicted with the opinions of the other physicians in the record was, by itself, sufficient to support the ALJ's determination.

Dr. Johnson opined that plaintiff had far less limiting physical restrictions with regard to workplace activities than those opined by Dr. Senegor. (AT 402 (opining that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand, walk, or sit six hours out of an eight-hour workday, and frequently stoop, bend, kneel and crouch).) The ALJ properly assigned "great probative weight" to Dr. Johnson's opinion for the reasons stated above. Dr. Johnson's opinion was based on an independent examination of plaintiff. Accordingly, the ALJ was

1  permitted to resolve the conflict between the two opinions by assigning lesser weight to Dr.
2  Senegor's opinion. Andrews, 53 F.3d at 1041 ("Where the opinion of the claimant's treating
3  physician is contradicted, and the opinion of a nontreating source is based on independent clinical
4  findings that differ from those of the treating physician, the opinion of the nontreating source may
5  itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

6  Furthermore, all other medical opinions in the record provided less severe limitations with
7  regard to plaintiff's physical impairments, further bolstering the ALJ's decision to assign Dr.
8  Senegor's opinion reduced weight on the basis that it was not supported by the medical evidence.
9  (See AT 93-94, 377-81, 474.) While plaintiff is correct that under the regulations the opinion of a
10 treating specialist such as Dr. Senegor is generally given more weight than that of other sources,
11 see 20 C.F.R. § 416.927(c)(5), the ALJ took this fact into account when he acknowledged Dr.
12 Senegor as a specialist and accorded his opinion only slightly reduced weight despite the fact that
13 the limitations he opined conflicted with those in the rest of the record. The fact that Dr. Senegor
14 is a specialist does not mean that the ALJ was precluded from assigning lesser weight to his
15 opinion on the basis that it conflicted with the opinions of other physicians in the record. The
16 ALJ did not err in considering Dr. Senegor's opinion because the ALJ provided a specific and
17 legitimate reason for giving decreased weight to this opinion, and the ALJ's reason was supported
18 by substantial evidence in the record.[5]

19 In sum, the ALJ's consideration of the medical opinions in the record was proper and
20 based on substantial evidence. Accordingly, plaintiff's arguments concerning the ALJ's RFC
21 determination are without merit.

22 ////
23 ////
24 ////
25 ////

---

[5] Because the ALJ's determination that Dr. Senegor's opinion conflicted with the other medical opinions in the record was a proper and sufficient reason for assigning that opinion lesser weight, the court need not address the ALJ's additional reasons for according Dr. Senegor's opinion "slightly reduced probative weight."

13

       2.     *Whether the ALJ Erred in Exclusively Utilizing the Medical-Vocational Guidelines at Step Five to Determine that there were Jobs that Existed in Significant Numbers in the National Economy that Plaintiff Could have Performed.*

Next, plaintiff argues that the ALJ erred in not consulting a vocational expert ("VE") in determining whether plaintiff was capable of performing her past work and whether there was other jobs within the national economy that plaintiff was capable of performing. Specifically, plaintiff asserts that the non-exertional limitations set forth in the ALJ's RFC determination regarding plaintiff's pushing, pulling, and overhead reaching abilities were severe enough to require the ALJ to consult a VE at Step Five of his analysis. Plaintiff argues that the ALJ's exclusive use of the Medical-Vocational Guidelines (the "grids") at Step Five in lieu of consulting a VE constituted reversible error.

The grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). An ALJ may resort to the grids at Step Five of the sequential analysis to determine whether there exists unskilled work within the national economy for which the claimant is capable of performing. "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations and quotation marks omitted). In such instances, the testimony of a VE is required. Id.

However, the ALJ is not required to proceed to Step Five of the sequential analysis when the ALJ determines that the claimant's impairments do not preclude her from performing her past relevant work because such a determination must necessarily result in a finding that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). A determination that the claimant is not precluded from performing past work "ma[kes] it unnecessary for the ALJ to proceed to the fifth

14

1  step to determine whether [the claimant] ha[s] the residual functional capacity to perform other

2  work." Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). In such as case, the ALJ is not

3  required to consult a VE. See id.; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding

4  that a "vocational expert's testimony was . . . useful, but not required" when the ALJ properly

5  determined that the claimant was still able to perform his prior job as a receiving clerk/inspector).

6      Here, the ALJ determined at Step Four that plaintiff's impairments did not prevent her

7  from performing her past relevant work as a telemarketer, therefore meaning she was not

8  disabled. (AT 21-22.) Accordingly, the ALJ was not required to continue to Step Five of the

9  sequential analysis unless plaintiff was able to show that her impairments precluded her from

10 returning to her prior job as a telemarketer. See 20 C.F.R. §§ 404.1520(f), 416.920(f); Matthews,

11 10 F.3d at 681 ("[S]ince [the plaintiff] failed to show that he was unable to return to his previous

12 job as a receiving clerk/inspector, the burden of proof remained with [the plaintiff].").

13     Plaintiff argues that the ALJ's Step Four determination was made in error because the

14 ALJ's RFC finding that plaintiff was limited to frequent face-to-face interactions with the general

15 public precluded her from being able to perform her past work as a telemarketer. Therefore,

16 plaintiff argues, the ALJ was required to continue to Step Five and utilize the testimony of a VE

17 to determine whether there were jobs plaintiff could do given her non-exertional limitations. This

18 argument is not well taken.

19     Plaintiff's RFC, as properly determined by the ALJ for the reasons stated above, did not

20 preclude her from returning to her prior job as a telemarketer. Dictionary of Occupational Titles

21 ("DOT") Listing 299.357-014 provides a description of the functional requirements for work as a

22 telemarketer. This Listing provides that work as a telemarketer is "sedentary work," meaning that

23 this work falls within the exertional level of work plaintiff could perform pursuant to the ALJ's

24 determination that plaintiff could "perform a wide range of light work."[6] (AT 17.) Furthermore,

---

[6] As noted above, "light work" is defined as work involving lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm and leg controls. 20 C.F.R. § 404.1567(b). "Sedentary work" is work involving lifting no more than 10 pounds at a time, occasionally lifting or carrying light articles, and may involve sitting as well as a certain amount of walking and standing. 20 C.F.R. § 404.1567(a). Generally, "[i]f someone can

plaintiff non-exertional limitations regarding her ability to push, pull, and reach with her upper extremities do not preclude her from this work because the Listing notes that the job requires only occasional reaching and handling and the ALJ's decision notes that plaintiff was limited to performing such activities "occasionally" with her right upper extremity and "frequently" with her left upper extremity. (AT 17). In addition, none of the other physical non-exertional limitations noted in the ALJ's decision would preclude plaintiff from work as a telemarketer as it is described in the DOT Listing.

Finally, while the ALJ found that plaintiff's impairments limited her to only frequent face-to-face contact with the general public (AT 17), such a restriction does not preclude plaintiff from working as a telemarketer. The description for this job provided by the Listing clearly states that a telemarketer "[s]olicits orders for merchandise or services over *telephone*." DOT Listing 299.357-014 (emphasis added). Nowhere in the description is it indicated that a telemarketer's job functions include face-to-face contact with the public. Because the ALJ found that plaintiff is limited only from face-to-face contact, and that she was only limited to "frequent, but less than constant" contact of this nature (AT 17), plaintiff's mental non-exertional limitations did not preclude her from engaging in her past work as a telemarketer.

Substantial evidence in the record supported the ALJ's RFC determination and the exertional and non-exertional limitations outlined in that decision did not preclude plaintiff from engaging in her past work as a telemarketer. Accordingly, the ALJ did not err in finding that plaintiff was not disabled at Step Four. Consequently, the ALJ was not required to continue on to Step Five of the analysis and did not need to consult a VE.

Moreover, even if the ALJ had erred at Step Four in determining that plaintiff could perform her past work, such error would have been harmless because the ALJ proceeded to Step Five of the analysis and properly determined that there were other jobs in the national economy which plaintiff could perform in light of her impairments. The ALJ's non-use of a VE's testimony would not have been in error even if the ALJ had been required to continue to Step

---

do light work, . . . he or she can also do sedentary work." 20 C.F.R. § 404.1567(b).

Five because there was no indication that plaintiff's non-exertional impairments were so severe as to require such testimony.  The ALJ considered each of plaintiff's non-exertional impairments and determined that "the[se] additional limitations have little effect on the occupational base of unskilled light work."  (AT 23.)  The ALJ then went on to individually consider each of plaintiff's non-exertional limitations and the effect they had on plaintiff's ability to perform unskilled light work based on the pertinent regulations, Social Security Ruling ("SSR") 83-14, SSR 85-14, and SSR 85-15.[7]  (AT 23.)  The ALJ found that none of the non-exertional limitations assessed in the RFC determination significantly reduced plaintiff's occupational base of unskilled light work.  Substantial evidence in the record supported the ALJ's RFC findings and the ALJ provided a careful and thorough analysis with regard to each of plaintiff's non-exertional limitations under the pertinent regulations and the Commissioner's interpretation of those regulations.  Accordingly, even assuming, *arguendo*, that the ALJ erred at Step Four, such error was harmless because the ALJ conducted a proper Step Five analysis that was supported by substantial evidence and was based on a proper determination that plaintiff's impairments were not so severe as to mandate the use of VE testimony.[8]

---

[7] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted).  Courts will "defer to [SSRs] unless they are plainly erroneous or inconsistent with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[8] Plaintiff appears to also argue that the ALJ erred in his assessment of plaintiff's credibility. (ECF No. 15-1 at 1, n.1, 21-22.)  Plaintiff admits that "a separate argument is not made solely on the basis of credibility," but that she "strongly objects to any inference by the Commissioner in her response that she implicitly agrees or concedes any issues pertaining to the ALJ's adverse credibility finding."  (Id. at 1, n.1 (emphasis omitted).)  However, plaintiff provides little, if any, analysis to assist the court in evaluating this contention.  Plaintiff only notes that her own testimony was consistent with the opinions of her treating physicians; she does not present any specific arguments that challenge the ALJ's reasons for discounting plaintiff's testimony.  The court will "review only issues which are argued specifically and distinctly." Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003).  When a claim of error is not argued and explained, the argument is waived. See id. at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); Hibbs v. Dep't of Human Res., 273 F.3d 844, 873 n. 34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of

V. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated:  March 3, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

assessment").  Because plaintiff fails to present any specific argument as to the ALJ's credibility determination, she has waived this issue.

18